WILSON (KEMMIL v.). See Case No. 7,-685.

WILSON (KING v.). See Case No. 7,810.

WILSON (KINGSTON v.). See Case No. 7,-823.

WILSON (LADD v.). See Cases Nos. 7,976 and 7,977.

## Case No. 17,816.

WILSON et al. v. LAWRENCE.

[2 Blatchf. 514.] [1]

Circuit Court, S. D. New York. Nov., 1852.

CUSTOMS DUTIES—VALUATION—DATE OF PURCHASE.
— PROTEST.

1. The doctrine of the cases of Pierson v. Lawrence [Case No. 11,158]; Pierson v. Maxwell [Id. 11,159]; Focke v. Lawrence [Id. 4,-894]; and Cornett v. Lawrence [Id. 3,241],— applied to the facts of this case.

[2. Where orders for goods are accepted by foreign vendors at the ruling market price, but the price advances greatly before the goods are delivered for shipment, and the invoices made out, the purchase is to be considered as made, within the meaning of the tariff acts, at the date of the invoice, and not at the date the orders are accepted; and the appraisers may raise the valuation accordingly.]

[3. In an action to recover duties paid under protest, the importers cannot avail themselves of any objections to the action of the customs officers, except those specified in the protests.]

This was an action [by Daniel M. Wilson and others] against [Cornelius W. Lawrence] the collector of the port of New York, to recover back an alleged excess of duties paid him. A verdict was taken for the plaintiffs, subject to the opinion of the court.

Elias H. Ely, for plaintiffs.

J. Prescott Hall, Dist. Atty., for defendant.

Before NELSON, Circuit Justice, and BETTS, District Judge.

BETTS, District Judge. This is another of the cases of iron importations. The iron in this case was imported by the plaintiffs in April, May and June, 1849. It was purchased by them from the Coalbrookdale Company, and Stitt, Brothers, of Liverpool, through an agent of the vendors in New York, by written orders addressed to the vendors in December, 1848, and January, 1849. On the trial, the agent testified that the course of business was to supply the iron at the prices which ruled when the order was booked and

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

accepted. That date is not given in the proofs, but it is to be assumed that the arrangement was completed in due course of the mails. Letters from the vendors to the plaintiffs, of contemporaneous dates with the invoices, were put in evidence, advising the plaintiffs that the iron ordered had then been shipped at Liverpool. It was further proved that the price of iron materially advanced in Liverpool, between the times the orders were received and the dates of the invoices and shipments, and that the invoices represented the prices at which it was agreed the iron should be furnished to the plaintiffs at Liverpool. The plaintiffs, when the invoice price was objected to at the custom house as being below the market value in Liverpool at the dates of the invoices, offered to show to the appraisers the correspondence above referred to, and claimed the right to enter the goods at the invoice valuations, based upon that correspondence and the actual purchase-prices on such contracts. Eight several entries were made. The appraisers raised the invoice prices to the market value at Liverpool, and duties were exacted on that valuation. The duties on the increase in valuation amounted in the whole to $538 80, against the payment of which the plaintiffs made, on the first entry, the following protest in writing: "We do hereby protest against the payment of duties on the extra 10s. per ton, added to the invoice per Wisconsin, from Liverpool, by the U. S. appraisers, as said invoice was made out and charged at fair market value at the time of purchase. We pay the additional duty to get possession of our iron, reserving our rights to future decisions on the subject." The other seven protests, written on the respective entries, varied somewhat from the terms of the first one, and were substantially as follows: "We protest against the payment of duty on any valuation exceeding our invoice, and only pay the duty on the value as appraised, to gain possession of our goods." The action is brought to recover back the extra payment of $538 80.

This statement of the case brings all the points raised upon it by the counsel for the plaintiffs within the principles adopted in the several other cases reviewed and decided at the present term, relative to the rights of importers under purchases of this character and protests of like import. Pierson v. Lawrence [Case No. 11,158]; Pierson v. Maxwell [Id. 11,159]; Focke v. Lawrence [Id. 4,894]; Cornett v. Lawrence [Id. 3,241].

In our opinion, the iron was not purchased by the plaintiffs, within the meaning of the duty acts of congress, until it was acquired by them in a condition for shipment; and we think, especially, that under their protests they cannot legally raise any question as to any proceeding at the custom-house, except as to whether the appraisement was according to the fair market value of the iron at Liverpool at the dates of the respective invoices. No proof was offered impugning the justness of the custom-house valuation in this respect, and, upon the reasons assigned in the cases before referred to, we hold that the plaintiffs cannot, under their protests, avail themselves of any other objection to the payment of the duties which were exacted. Judgment for the defendant.